HAZEL ENTERPRISES, LLC, Appellant

v.

Wendy Treas MITCHUSON and Marty Lee Mitchuson, Appellees

NO. 2015-CA-000904-MR

Court of Appeals of Kentucky.

JULY 7, 2017; 10:00 A.M.

BRIEF FOR APPELLANT: Alan Pritchard, Memphis, Tennessee.

BRIEF FOR APPELLEES: Amy Harwood-Jackson, Gilbertsville, Kentucky.

BEFORE: ACREE, MAZE, AND TAYLOR, JUDGES.

## OPINION

MAZE, JUDGE:

Hazel Enterprises, LLC (hereinafter "Hazel") appeals from an order of the Marshall Circuit Court denying its motion for summary judgment and granting summary judgment in favor of Appellees, Wendy and Marty Mitchuson (hereinafter, "the Mitchusons"). Hazel argues that the trial court erred as a matter of law when it ruled that Hazel was not entitled to twelve percent statutory interest and litigation fees for work performed in its role as third-party purchaser of a tax bill the Mitchusons owed from 2002.

We agree with Hazel as to interest; however, we see no error in the trial court's refusal to award attorneys' fees and costs under the particular circumstances of this case. Therefore, we affirm in part, reverse in part, and remand.

### Background

The facts of this case are undisputed. On May 31, 2011, for the sum of $234.22, Hazel purchased a 2002 tax bill on property the Mitchusons owned. Twenty-three months later, following two notice letters and the statutory forty-five day tolling period, Hazel sent a letter to the Mitchusons demanding payment of $1,926.50. This sum included the purchase price of the certificate of delinquency, interest, an administrative fee, prelitigation attorney's fees, and litigation attorney's fees and costs of $1,299.50. Litigation had not ensued as of the date of this letter. In response to Hazel's demand letter, the Mitchusons tendered a check to Hazel in the amount of $627.00 [1] along with a letter dated November 15, 2013. Hazel rejected and returned this check to the Mitchusons, and it filed the present action in Marshall Circuit Court on December 20, 2013.

In its Complaint, Hazel demanded the cost of the certificate of delinquency, interest from the date of purchase, an administrative fee, prelitigation attorneys' fees of $234.22, and litigation attorneys' fees and costs. In an affidavit Hazel filed with the trial court, counsel for Hazel stated its litigation attorney's fees and costs now totaled $4,157.74.[2] With their Answer, the Mitchusons asked the trial court to grant summary judgment in their favor. Specifically, the Mitchusons asked the court to set their debt to Hazel at either $627.00 or $648.06 (the same amount plus interest from May 2013 to January 2014).

On April 24, 2015, Hazel also filed a motion for summary judgment seeking an order of sale and the interest, fees, and costs listed in its Complaint and subsequent affidavit. In a May 8, 2015 order, the trial court entered judgment in Hazel's favor in the amount of $627.00, and it granted the Mitchusons' motion for summary judgment on the subject of litigation attorney's fees. The trial court asserted its belief that Hazel's demand of nearly $1,300.00 in litigation fees was unsupported in the record, "unconscionable," and "not a legitimate claim under KRS[3] 134.452." The trial court further held that Hazel's suit to settle the tax lien was "unnecessary." Hazel now appeals from this order.

### Standard of Review and the Summary Judgment Standard

■ Our review of an appeal from summary judgment is well-settled. As a summary judgment involves no fact finding, this Court's review is *de novo*, in the sense

---

1. This amount constituted the total amount Hazel demanded less the litigation attorney's fees and costs of $1,299.50.

2. This broke down to $2,620.00 in attorneys' fees and $1,537.74 in costs.

3. Kentucky Revised Statutes.

that we owe no deference to the conclusions of the trial court. *Blevins v. Moran,* 12 S.W.3d 698, 700 (Ky. App. 2000).

■ "The proper function of summary judgment is to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.,* 807 S.W.2d 476, 480 (Ky. 1991). Therefore, we will find summary judgment appropriate only "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR [4] 56.03. We look to whether the Mitchusons met their burden of showing that Hazel could not prevail under any circumstances on its demand for interest, fees, and costs. *Paintsville Hosp. Co. v. Rose,* 683 S.W.2d 255, 256 (Ky. 1985).

### Analysis

On appeal, Hazel contends that the trial court erred on two issues: the failure to award full interest pursuant to KRS 134.452(1)(b) and KRS 134.125; and the failure to award any litigation attorneys' fees or costs pursuant to KRS 134.452(3). We shall address these issues in-turn.

### I. Hazel's Entitlement to Interest

■ Hazel argues that the trial court erred in awarding only $58.56 in interest accrued through May 2013, when the Mitchusons tendered, and Hazel rejected, partial payment of the demanded amount. Hazel contends that it was entitled to $114.77 in interest pursuant to KRS 134.125 and KRS 134.452, an amount which includes interest accrued through May 2015, when

the trial court entered its order. We must agree.

KRS 134.452 provides, in pertinent part,

(1) Notwithstanding any other provisions of this chapter, a third-party purchaser of a certificate of delinquency shall be entitled to collect only the following prelitigation fees:

(a) The amount actually paid for the certificate of delinquency;

(b) Interest as provided in KRS 134.125, calculated on the amount actually paid to the county clerk from the date the certificate of delinquency was purchased until paid; and

(c) 1. Prelitigation attorneys' fees, which may include amounts incurred for collection efforts and costs related to notification, processing, research, communication, compliance, legal costs, documentation, and similar expenses, from the date the third-party purchaser purchases the certificate of delinquency from the county clerk, to the date on which the notice required by KRS 134.490(2) is mailed by the third-party purchaser.

Likewise, KRS 134.125 states,

(1) A certificate of delinquency or personal property certificate of delinquency shall bear simple interest at twelve percent (12%) per annum. Interest shall initially be calculated based on the base amount established by KRS 134.122(2)(d). Interest shall be calculated in subsequent months on the outstanding balance of the base amount until paid. A fraction of a month shall be counted as an entire month.

(2) If a certificate of delinquency is paid by a third-party purchaser, the amount paid by the third-party purchaser shall become the base amount upon which simple interest is initially calculat-

---

4.  Kentucky Rules of Civil Procedure.

ed. Interest shall be calculated in subsequent months on the outstanding balance of the base amount until paid.

In a recent case which also concerned Hazel, this Court—in fact, this Judge—held that Hazel was not automatically entitled to *post-judgment* interest under these statutes. Rather, we held that post-judgment interest, pursuant to KRS 360.040, was something the trial court could award, reduce, or deny at its discretion. *See Hazel Enterprises, LLC v. Ray*, 510 S.W.3d 840 (Ky. App. 2017). In reaching this conclusion, we emphasized the relative discretion the statute provided trial courts: "[S]uch judgment may bear less interest than twelve percent (12%) if the court rendering such judgment … is satisfied that the rate of interest should be less than twelve percent." KRS 360.040. This Court has also held, again in the context of post-judgment interest, that "the trial court may find that the statutory interest rate is not appropriate given the equities of the particular case and may deny post-judgment interest altogether." *Ensor v. Ensor*, 431 S.W.3d 462, 477 (Ky. App. 2013), citing *Courtenay v. Wilhoit*, 655 S.W.2d 41, 42 (Ky. App. 1983).

In contrast to the post-judgment interest statute, no such discretionary language exists within KRS 134.452 which would permit a trial court to reduce or deny an award of interest accruing from a certificate of delinquency. The mandatory language of KRS 134.452 compelled the trial court in this case to award Hazel interest, at a rate of twelve percent per annum, accruing from the date Hazel purchased

the certificate and through the trial court's May 8, 2015, order. Though the trial court apparently wished—perhaps rightfully—to affix interest based upon the facts and equities of this case, the statute simply did not permit such consideration. The plain language of KRS 134.452(1) demands an award of interest at the rate and for the duration prescribed therein and in KRS 134.125. Hazel was entitled to summary judgment on this issue, and we remand to the trial court for entry of an order awarding Hazel interest through May 8, 2015.

**II. Hazel's Assertion of Litigation Attorney's Fees and Costs**

■ Hazel next contends that the trial court erred when it refused to award Hazel any of the litigation fees and costs it asserted in pleadings and via an affidavit. Hazel asserts that these fees and costs were reasonable and that the trial court incorrectly deemed Hazel's suit against the Mitchusons, and the litigation fees, "unnecessary." We observe no such error.

In addition to the "prelitigation attorneys' fees" authorized under KRS 134.452(1)(c),[5] "a third-party purchaser may collect actual, reasonable attorneys' fees and costs that arise due to the prosecution of collection remedies or the protection of a certificate of delinquency that is involved in litigation." KRS 134.452(3)(a). The statute goes on to provide that "[f]ees and costs permitted under this subsection include fees and costs incurred from the first day after the notice required by KRS 134.490(2) is sent through the day any litigation is finally concluded." *Id.* An as-

---

**5.** This statute authorizes recovery by third-party purchaser of amounts incurred for collection efforts and costs related to notification, processing, research, communication, compliance, legal costs, documentation, and similar expenses, from the date the third-party purchaser purchases the certificate of delinquency from the county clerk, to the date on which the notice required by KRS

134.490(2) is mailed by the third-party purchaser.

KRS 134.452(1)(c)1. The amount of prelitigation attorneys' fees a third party may recover on a tax bill between five and 350 dollars is capped at the purchase price of the certificate of delinquency. KRS 134.452(1)(c)2.a.i. In this case, Hazel's prelitigation attorneys' fees were capped at $234.22.

serted attorneys' fee of more than $2,000 "shall be allowed if authorized by the court upon a finding that the third-party purchaser incurred actual attorneys' litigation fees in excess of two thousand dollars ($2,000) and that those attorneys' litigation fees were warranted based upon the complexity of the issues presented in the litigation." KRS 134.452(3)(b)2.

KRS 134.452(3) "does not automatically bestow upon a third-party purchaser whatever fees and costs it claims." *Tax Ease Lien Servicing, LLC v. Smith*, 2014 WL 7013251, 2013-CA-002095 (Ky. App. Dec. 12, 2014).[6] The express language of the statute requires that fees asserted must be for actual work performed and that the work must be documented to the court. The statute ultimately places the determination as to whether fees and costs are reasonable within the trial court's discretion. Overall, any determination as to the reasonableness of attorneys' fees "should be done with a view to common sense realism[.]" *In re Citizens Fidelity Bank & Trust Co.*, 550 S.W.2d 569, 570 (Ky. App. 1977).

As the trial court touched upon in its order, the issue in this case is not what fees and costs accrued after Hazel initiated litigation, but whether it was reasonable for Hazel to demand nearly $1,300.00 in "litigation attorneys' fees and costs" nearly twenty months before it filed suit to enforce its lien. To be clear, the statute does not require that litigation be ongoing for "litigation attorneys' fees" to accrue. Rather, such fees can accrue prior to litigation for efforts to prosecute "collection remedies" as long as the work to that end was "actual, reasonable," "documented," and occurred after the third-party purchaser mailed the forty-five-day notice letter. KRS 134.452(3)(a)-(b).

Regarding its attorneys' fees, it is difficult, if not impossible, to discern from Hazel's affidavit and other items in the record precisely what fees included in its initial demand it attributed to work performed as of the date of the demand. It clearly drafted a demand letter, and we know that it drafted a Complaint because Hazel included a copy of that document along with the letter threatening to file suit. The remaining fees and costs asserted in counsel's affidavit, by their very nature, could not have accrued until after the demand letter, or until Hazel filed suit. This raises grave doubt in the mind of this Court—as it did for the trial court—that Hazel was entitled as a matter of law to demand $1,299.50 in attorneys' fees and costs when it did. Such lack of clarity does not constitute a genuine issue of material fact barring summary judgment. It constitutes a failure on the part of Hazel to document its fees to the satisfaction of KRS 134.452(3) and the trial court. Therefore, we affirm judgment in the Mitchuson's favor on this issue.

KRS 134.452 and its sister statutes permitting the recovery of fees and costs by third-party purchasers serve an important purpose for our Commonwealth—a purpose with which we wish not to interfere. However, these statutes are not a license to assert prospective or unearned legal fees. In-line with our recent holdings we will once again say that when a third-party purchaser asserts prospective or unearned legal fees as part of its initial collection efforts, or when the documentation in the record does not reflect an entitlement to fees at the time they were asserted, the purchaser endangers its ability to recover those fees and costs. At all times during collection efforts and litigation, fees

**6.** Pursuant to CR 76.28.(4)(c), unpublished opinions rendered after January 1, 2003 may be cited as persuasive authority if there is no published opinion which would adequately address the issue before the Court.

and costs must be actual; they must be reasonable; they must be documented; they must be warranted by the complexity of issues presented; and they must accrue within the timeframe prescribed by KRS 134.452.

Despite Hazel's assertions, including its affidavit, the record lacks sufficient documentation that Hazel was entitled to assert nearly $1,300.00 in litigation attorneys' fees in its initial demand letter. What is apparent from the documentation which exists in the record is that Hazel simply had no right under KRS 134.452 to demand at least some of the fees it demanded of the Mitchusons. While we will not go as far as the trial court in calling the litigation that ensued "unnecessary," we will say that Hazel's demand of unjustified or prospective fees and costs at the outset of its collection efforts only prolonged those efforts—a fact from which it should not be permitted to benefit financially.

## Conclusion

With increasing frequency, this Court has been called upon to resolve issues arising from a third-party purchaser's assertion of interest, fees, and costs pursuant to KRS 134.452. To some degree, this is a recurring issue brought upon by said purchasers' chosen method of billing and collecting on tax bills they have purchased. We have declared—quite recently and even to the same Appellant—"[w]hile it is not our place to suggest a better means of handling the situation ..., we will suggest that one must exist." *See Hazel Enterprises, supra,* at 845. We declared this in response to Hazel's demand of post-judgment interest after it rejected a debtor's good-faith effort to pay his debt, less an exorbitant, unjustified, and undocumented attorneys' fee. The saying goes that "[h]istory never repeats itself, but it does rhyme." [7] Indeed, in our business, it must.

The trial court committed no error when it granted summary judgment in the Mitchuson's favor as to attorneys' fees and costs. However, Hazel was entitled to judgment as a matter of law and an award of interest through May 8, 2015, the date of the trial court's order. Therefore, we remand to the trial court for entry of an order to that effect; however, we leave to the trial court's discretion, given the facts of this case and our prior ruling on the subject, whether post-judgment interest is appropriate, if sought on remand. The judgment of the Marshall Circuit Court is therefore affirmed in part, reversed in part, and remanded.

ALL CONCUR.

---

7. The saying is usually attributed to Mark Twain, but there is no substantive evidence that Twain made this remark. http://quote investigator.com/2014/01/12/history-rhymes/ (Accessed June 26, 2017).